IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAACO FRANCHISOR SPV LLC, as
successor-in-interest to MAACO
FRANCHISING, INC.,

       Plaintiff,

v.                                             Civ. No. 21-0739 KG/KK

S&J AUTO1 LLC, S&J AUTO2 LLC,
S&J HOLDINGS INC., JEFFREY SCHULTZ,
and STEPHANIE SCHULTZ,

       Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT

This matter comes before the Court on Plaintiff Maaco Franchisor SPV LLC, as

successor-in-interest to Maaco Franchising Inc.'s (Maaco) Motion for Default and Summary

Final Judgment (Motion).  (Doc. 15).  Having considered the relevant pleadings and the Motion,

as well as the Memorandum of Law in Support of the Motion together with the Exhibits thereto

(ECF No. 16), reviewed the authorities submitted in connection therewith, and being otherwise

fully advised in the premises, the Court grants the Motion.

A.    *Factual and Procedural History*

Maaco sued Defendants S&J Auto1 LLC, (Operating Co. 1), S&J Auto2 LLC,

(Operating Co. 2), S&J Holdings Inc., (Parent Corp.), Jeffrey Schultz (J. Schultz), and Stephanie

Schultz (S. Schultz) (collectively, "Defendants") alleging that Defendants breached various

contracts, including franchise agreements, a sublease, and personal guarantees, all of which were

related to Defendants' operation of two Maaco collision repair and auto painting centers.  Maaco

properly served Defendants, but Defendants did not respond or otherwise appear to defend this

lawsuit. The Clerk of Court entered default against Defendants on September 20, 2021. (Doc. 13). On January 24, 2022, Maaco filed the pending Motion. Defendants have not responded to the Motion or otherwise appeared in this action.

Maaco brings the following claims against the Defendants:

Count I:     Breach of Franchise Agreement against Operating Co. 1 for Abandonment;

Count II:    Breach of Franchise Agreement against Operating Co. 2 for Abandonment;

Count III:   Breach of Franchise Agreement against Operating Co. 1 for Failure to Pay Outstanding Fees;

Count IV:    Breach of the Franchise Agreement against Operating Co. 2 for Failure to Pay Outstanding Fees;

Count V:     Breach of Sublease against Parent Corp. for Abandonment and Failure to Pay Rent;

Count VI:    Breach of Personal Guaranty No. 1 against J. Schultz and S. Schultz; and

Count VII:   Breach of Personal Guaranty No. 2 against J. Schultz and S. Schultz.

i.      *The Agreements*

On or about March 27, 2018, Maaco and J. Schultz, entered into a Franchise Agreement relating to the operation of Maaco Collision Repair & Auto Painting Center No. M2598 ("2598 Franchise Agreement"), wherein J. Schultz agreed to assume, all of the privileges, obligations, terms, and conditions contained therein. Also, on or about March 27, 2018 Maaco and J. Schultz, entered into a Franchise Agreement relating to the operation of Maaco Collision Repair & Auto Painting Center No. M2599 ("2599 Franchise Agreement") (2598 Franchise Agreement and 2599 Franchise Agreement are collectively referred to as the "Franchise Agreements"), wherein J. Schultz agreed to assume, all of the privileges, obligations, terms and conditions contained therein. Contemporaneously with the execution of the Franchise Agreements, Maaco and J. Schultz executed a "Real Property Sublease" (the "Sublease") for Center M2598 and

2

Center M2599 (together, the "Centers") wherein J. Schultz agreed to assume, all of the privileges, obligations, terms and conditions contained therein.

Thereafter, on August 29, 2018 Maaco and J. Schultz entered into an Assignment and Assumption Agreement ("Assignment No. 1") wherein J. Schultz assigned his rights and obligations under the Franchise Agreements to Parent Corp., which was organized by J. Schultz for the convenience and purpose of owning and operating the Centers. On or about October 12, 2018, Maaco, J. Schultz, Parent Corp., and S. Schultz executed an Addendum to Franchise Agreements (the "Addendum") wherein S. Schultz was added to the Franchise Agreements and Assignment No. 1. Contemporaneously with the execution of the Addendum, J. Schultz and S. Schultz (together, the "Schultzes") executed a Personal Guaranty ("Personal Guaranty No. 1") wherein they each agreed to be jointly and severally liable with Parent Corp., with respect to any payment or obligation required under the Franchise Agreements and amendments to it.

On November 18, 2018, Maaco and Parent Corp. entered into two Assignment and Assumption Agreements ("Assignment No. 2") wherein Parent Corp. assigned its rights and obligations under the Franchise Agreements to Operating Co. 1 and Operating Co. 2, which are two subsidiary companies controlled by Parent Corp. and the Schultzes for the convenience and purpose of owning and operating the Centers. Contemporaneously with the execution of Assignment No. 2, J. Schultz and S. Schultz executed a Personal Guaranty ("Personal Guaranty No. 2") wherein they each agreed to be jointly and severally liable with Operating Co. 1 and Operating Co. 2 (the "Operating Companies") with respect to any payment or obligation required under the Franchise Agreements and other agreements concerning the operation of the Centers. Also, on November 18, 2018, Maaco and J. Schultz entered into an Assignment and Assumption

3

of Leases ("Lease Assignment") wherein J. Schultz assigned his rights and obligations under the Sublease to Parent Corp.

 *ii.*  <u>Breach of the Agreements</u>

 Pursuant to the terms of the Franchise Agreement, the Operating Companies and Schultzes (the "Franchisee Defendants") became authorized and were required to occupy and operate the Centers for fifteen (15) years (the "Franchise Term"). Franchisee Defendants were required to continuously operate the Centers and pay all royalties, advertising contributions and other fees to Maaco on a weekly basis throughout the Franchise Term. Pursuant to the terms of the Sublease, the Parent Corp. and the Schultzes became authorized to occupy and operate the Centers until October 25, 2023 (the "Sublease Term"). Further, the Schultzes agreed under Personal Guaranty No. 1 and Personal Guaranty No. 2 (together, the "Guaranties") to be jointly and severally liable with Parent Corp. and the Operating Companies with respect to any payment or obligation required under the Franchise Agreements and other agreements concerning the operation of the Centers, including the Sublease.

 Defendants breached their obligations under the Franchise Agreements and Sublease, respectively, by (i) failing to pay all royalties, advertising contributions and other fees to Maaco on a weekly basis as required under the Franchise Agreements; (ii) failing to pay outstanding fees under the Sublease, including rent; and (iii) prematurely closing and abandoning the Centers prior to the end of the Franchise Term and the Sublease Term. To date, Defendants have not compensated Maaco for the damages caused by their breach of each of the Franchise Agreements, the Sublease and the Guaranties (collectively, the "Agreements").

 *iii.*  <u>Damages</u>

 As a result, Maaco seeks the following damages:

    a.   Unpaid rent, royalties, advertising contributions, software fees, and other outstanding fees during Defendants' operation of the Centers;

    b.   Lost royalties and advertising contributions through the remainder of the Franchise Term for each Center;

    c.   Maaco's reasonable attorneys' fees and costs; and

    d.   Prejudgment interest.

B.    *Standard of Review*

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A party may request a default judgment in two ways: (1) if a plaintiff's claim is for a sum certain or a sum that can be made certain with computation, a plaintiff may file a request with the Clerk attaching an affidavit showing the amount due; or (2) in all other cases, the party seeking default judgment must apply to the Court. Fed. R. Civ. P. 55(b)(1)–(2).

Upon the entry of default, the defaulting defendant(s) are considered to have admitted the well-pleaded factual allegations regarding liability. Fed. R. Civ. P. 8(b)(6); *United States v. Craighead*, 176 Fed. Appx. 922, 925 (10th Cir. 2006). Before entering default judgment, the Court must assure itself that it has jurisdiction over the subject matter and the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). Additionally, the Court must assure itself that Plaintiff has stated a claim upon which relief may be granted. *Bixler v. Forester*, 596 F.3d 751, 762 (10th Cir. 2010). Upon establishing liability, the Court may enter "a default judgment for a damage award without a hearing if the amount claimed is 'one capable of mathematical calculation.'" *Martinez v. Dart Trans, Inc.*, 2021 WL 2788434, at *12 (D.N.M.

July 5, 2021) (citing *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007)).

C.   *Discussion*

The Court finds that it has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because (1) Plaintiff, a citizen of Delaware and North Carolina, is a citizen of a different state than all Defendants, which are citizens of New Mexico, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a); *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008); (Doc. 1) at 2-3. The Court has personal jurisdiction over Defendants S&J1, S&J2, and S&J Holdings because Plaintiff served process in this District on the registered agent for each Defendant, pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Docs. 6, 7, 10). The Court has personal jurisdiction over Defendant Jeffrey Schultz because he was personally served with process in this District, pursuant to Rule 4. (Doc. 8). Finally, the Court has personal jurisdiction over Defendant Stephanie Schultz because Plaintiff served process at her home address, in this District, and by leaving the appropriate documents with someone of suitable age and discretion who resides there, pursuant to Rule 4. (Doc. 9).

The Court next must determine whether Plaintiff has stated a claim for relief. Due to Defendants' default, the facts asserted in Plaintiff's Complaint are taken as admitted. *United States v. Craighead*, 176 Fed. Appx. 922, 924 (10th Cir. 2005). The Court adopts the facts as stated in Plaintiff's Complaint and reiterated in the Motion. Once default is entered, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler*, 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998)). "There must be a sufficient basis in the pleadings for the

judgment entered." *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). As discussed above, the Court is persuaded that Plaintiff plausibly stated a claim for relief on each count in the Complaint.

Turning to the merits, the Court finds that Maaco is entitled to default judgment as to liability and Maaco's materials show, by a preponderance of evidence, that Defendants have breached the respective Agreements with no dispute as to any material fact. Thus, the Court must assess the damages claimed by Maaco. Because Maaco has submitted affidavits, exhibits, and a memorandum in support of the damages amount, the Court finds that a hearing on damages is not necessary.

     *i.*     <u>*Maaco's Entitlement to Damages*</u>

Maaco's claim is substantively governed by North Carolina law, pursuant to the parties' mutual assent to North Carolina law in Section 25.A of the Franchise Agreements. *See Presbyterian Healthcare Services v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157 (D.N.M. 2015) ("New Mexico respects party autonomy, and the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision"); NMSA § 55–1–301(A).

Pursuant to North Carolina law, Maaco is entitled to compensation for the injury caused and is entitled to be placed in the same position it would have been had the obligations under the Franchise Agreements been performed. *See Strader v. Sunstates, Corp.*, 500 S.E.2d 752, 757 (N.C. Ct. App.), disc. rev. denied, 514 S.E.2d 274 (N.C. 1988) ("As a general rule, the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he would have been in had the contract been performed.").[1] This

---

[1] The outcome would be the same under New Mexico law. *See Thistlethwaite v. Elements*

includes the value of amounts owed to Maaco prior to Defendants' premature closure of the

Centers, the lost royalties and advertising contributions that are the proximate result of

Defendants' breaches, and attorneys' fees and costs. *See Meineke Car Care Cts., Inc. v. RLB*

*Holdings, LLC*, 423 Fed. Appx. 274, 281 (4th Cir. 2011); *see also* (Doc. 1-2) at 31 (providing for

attorneys' fees and costs in event of lawsuit); (Doc. 1-3) at 31 (same); (Doc. 1-5) at 3 (same);

(Doc. 1-7) at 3 (same); (Doc. 1-8) at 3 (same).  Furthermore, "[d]amages for breach of contract

may include loss of prospective profits where the loss is the natural and proximate result of the

breach." *Meineke Car Care Ctrs.*, 423 Fed. Appx. at 281 (alteration in original) (quoting *Mosley*

*& Mosley Builders, Inc. v. Landin Ltd.*, 87 N.C. App. 438, 361 S.E.2d 608, 613 (1987)).[2]

In North Carolina, a three-part test applies when determining whether a damaged party

can recover lost profits:

> when it is made to appeal (1) that it is reasonably certain that such profits would
> have been realized but for the breach of contract, (2) that such profits can be
> ascertained and measured with reasonable certainty, and (3) that such profits may
> reasonably be supposed to have been within the contemplation of the parties when
> the contract was made, as the probable result of the breach.

*Meineke Car Care Cts.*, 423 Fed. Appx. at 281 (quoting *Keith v. Day*, 81 N.C. App. 185, 343

S.E.2d 562, 568 (1986)).  The Court finds that Defendants' closure of each of the Maaco Centers

prior to the expiration of the agreed upon Franchise Term and Sublease Term proximately caused

---

*Behavioral Health, Inc.*, 2015 WL 11117306, at *4 (D.N.M. Apr. 2, 2015) ("a plaintiff is
allowed to recover general damages 'that arise naturally and necessarily as the result of the
breach' and give plaintiff the value he 'would have obtained from the breached contract'"
(quoting *Sunnyland Farms, Inc. v. Central N.M. Elec. Co-op, Inc.*, 301 P.3d 387, 392 (N.M.
2013)).

[2] So, too, if New Mexico law applied. *See Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-
016, ¶ 40 (stating that for cases in which "profits are the inducement for entering into a contract,
lost profits are the proper measure of damages for a breach of contract if they can be proven with
reasonable certainty." (quoting *Ranchers Exploration & Dev. Corp. v. Miles*, 102 N.M. 387, 389,
696 P.2d 475, 477 (1985))).

Maaco's damages. Defendants' closure of the Centers "stopped the potential for generating any revenues through their future operation." *Id.* at 283 (finding that the franchisee's abandonment of the Meineke Centers was the proximate cause of Meineke's lost profits comprised of royalties and advertising fund contributions).

Using historical data provides sufficient evidence to establish the amounts of lost profits with reasonable certainty. *Id.* at 285 (explaining that a historical analysis of the center's actual revenues projected into the future is "a methodology North Carolina courts have upheld as a reasonable basis for calculating damages like the future royalties and advertising fund contributions sought here …"). In the *Meineke Car* case, Meineke calculated damages by: 1) determining the average weekly sales of the franchise location in prior years; 2) multiplying the average weekly sales by the re-franchising period to determine the projected sales for the re-franchise period; 3) multiplying those projected sales for the re-franchise period by an average historical royalty rate to determine the prospective franchise fees; 4) deducting from the prospective fees any incremental savings resulting from the premature closing of the franchise; and 5) discounting the remaining amount to present value. *Id.* The Fourth Circuit held that calculating future damages arising from the closure of a franchise is acceptable when the calculation uses data specific to that franchise based on a historical analysis of actual revenues. *Id.* (citing *Mosley & Mosley Builders, Inc.*, 361 S.E.2d at 613).

Maaco has employed the methodology from the *Meineke Car* case to determine all prospective damages arising from the Franchise Agreements the respective Defendants entered into or personally guaranteed.

Whether the parties contemplated that breaching the Franchise Agreements would cause Meineke to lose profits was also considered by the Court in *Meineke Car*. That court found there

were several factors that supported a finding that the parties contemplated lost profits as damages, including the 15-year term in the franchise agreement, the grant of an exclusive territory, and the fact that the entire purpose of the franchise agreement was to establish a binding agreement whereby the franchisee would pay royalties and make advertising contributions to Meineke in exchange for the use of Meineke's intellectual property and proprietary system. *Id.* at 288. Other courts applying North Carolina law have determined that where the purpose of the franchise agreement was to establish a longstanding franchise relationship between the parties, it is reasonable to assume that the parties contemplated the required profits for the duration of the agreement. *See, e.g.*, *Grout Doctor Global Franchise Corp. v. Groutman, Inc.*, No. 7:14–CV–105–BO, 2015 WL 2353698, at *3 (E.D.N.C. May 14, 2015) (finding a 7-year term and exclusive territory sufficient proof the parties contemplated future profits).

The Franchise Agreements in this case evidence that the parties contemplated the future damages caused by material breach of the Franchise Agreements. By agreeing to relatively long terms with rights to renew, Defendants could feel secure making a substantial investment in the equipment, furnishings, training and property improvements to open its Maaco Centers. Similarly, Maaco would know that the territory covered by the Franchise Agreements was locked up for a defined term and the franchisor could focus on selling franchises in other locations. Therefore, the Court concludes that Maaco established its entitlement to future damages.

   ii.   *Determining the Amount of Recoverable Damages*

Under North Carolina law, the damaged party has a duty to mitigate its damages by using reasonable care and diligence to lessen the consequences of the breach. *Meineke Car Care Ctrs.*, 423 Fed. Appx. at 281 (citing *Miller v. Miller*, 273 N.C. 228, 160 S.E.2d 65, 74 (1968)). In the

*Meineke Car* case, Meineke alleged that by only seeking lost profits for three years – the time it would take to replace the franchisee – it had sufficiently mitigated its damages. *Id.* at 286, 288–89. The court emphasized that should there be a finding of a failure to mitigate by Meineke, it would not bar recovery, but only limit the damages that may be recovered. *Id.* at 288 (citing *Miller*, 160 S.E.2d at 73-74). Significantly, the court noted that where a mitigation of damages defense is raised, it is the burden of the party raising the defense to prove that the damaged party "failed to 'do what reasonable business prudence required to minimize [its] damages.'" *Id.* (alteration in original) (quoting *Mt. Gilead Cotton Oil Col. V. W. Union Tel. Co.*, 171 N.C. 705, 89 S.E. 21, 22 (1916)). Here, despite notice of these proceedings, Defendants have failed to respond and thus have not raised any affirmative defenses.

Maaco has reasonably established that three years of lost future profits may be recoverable under North Carolina law. Maaco credibly asserts that, once a franchisee abandons or otherwise ceases operations at a given location, it takes on average three (3) years to replace the franchisee's operations in that same territory regardless of whether Maaco specifically markets the closed location. Therefore, Maaco is entitled to lost profits under the terms of the Franchise Agreements because those lost profits are: (i) reasonably certain to have been realized except for the breach of contract; (ii) calculable and/or measurable with reasonable certainty; and (iii) were reasonably supposed to have been within the contemplation of the parties at the time they entered into each Franchise Agreement.

In addition, the amounts past due under the Franchise Agreements and Sublease are undisputed. Maaco and Defendants entered into valid and enforceable contracts and Maaco fully performed under the Agreements. Defendants unilaterally stopped paying the amounts due and owing to Maaco under each of the Agreements without any justification. A breach of contract

action under North Carolina law involves the existence of a valid contract and breach of the terms of that contract. *Sanders v. State Pers. Comm'n*, 677 S.E.2d 182, 187 (N.C. Ct. App. 2009). The Defendants' breaches and failures to perform under the respective Agreements have proximately caused Maaco actual damages and lost profits. All damages sought flow directly from Defendants' breaches of the respective Agreements.

The pre-termination damages accrue pre-judgment interest at the statutory rate of 8% under North Carolina General Statutes §24-1, calculated from the December 15, 2020 termination date through December 31, 2021 (381 days). N.C. Stat. § 24-5(a).

Based on the declaration and documentary evidence submitted, Maaco is entitled to default judgment in relation to the M2598 Franchise Agreement against S&J Auto1, LLC, Jeffrey Schultz, and Stephanie Schultz, jointly and severally, and for a damage award as follows:

| | |
|---|---:|
| Pre-Termination Damages: | $ 57,410.13 |
| Prejudgment Interest on Pre-termination Damages: | $ 4,794.14 |
| Lost Royalties & Advertising Contributions | |
|   for 3 years (156 weeks): | $245,224.20 |
| Less Incremental Savings for 3 years (156 weeks): | ($ 3,000.00) |
| | $242,224.20 |
| Discounted to Net Present Value at 6% | $228,513.40 |
| Total Amount Due and Owing as of December 31, 2021: | $290,717.67 |

Based on the declaration and documentary evidence submitted, Maaco is entitled to default judgment in relation to the M2599 Franchise Agreement against S&J Auto2, LLC, Jeffrey Schultz, and Stephanie Schultz, jointly and severally, and for a damage award as follows:

| | |
|---|---:|
| Pre-termination damages: | $ 53,329.84 |
| Prejudgment Interest on Pre-termination damages: | $ 4,453.41 |
| Lost Royalties & Advertising Contributions | |
|   for 3 years (156 weeks): | $169,147.68 |
| Less Incremental Savings for 3 years (156 weeks): | ($ 3,000.00) |
| | $166,147.68 |
| Discounted to Net Present Value at 6% | $156,743.09 |
| Total Amount due and owing as of December 31, 2021: | $214,526.34 |

Based on the declaration and documentary evidence submitted, Maaco is entitled to

default judgment in relation to the Sublease against S&J Auto Holdings, Inc., Jeffrey Schultz,

and Stephanie Schultz, jointly and severally, and for a damage award as follows:

| | |
|---|---|
| Pre-termination damages (rent) for Center M2598: | $149,618.21 |
| Pre-termination damages (rent) for Center M2599: | $133,936.93 |
| Prejudgment Interest on Pre-termination damages: | $23,678.80 |
| Total Amount due and owing as of December 31, 2021: | $307,233.94 |

As the prevailing party, Maaco is entitled to recover attorneys' fees and costs incurred in

attempting to enforce the terms of the Agreements, which constitutes additional damages caused

by Defendants' respective breaches. *See* Fed. R. Civ. P. 54(d); (Doc. 1-2) at 31 (providing for

attorneys' fees and costs in event of lawsuit); (Doc. 1-3) at 31 (same); (Doc. 1-5) at 3 (same);

(Doc. 1-7) at 3 (same); (Doc. 1-8) at 3 (same).  Maaco has thirty (30) days after entry of

judgment to file a motion for attorneys' fees and nontaxable costs.  D.N.M. LR-Civ. 54.5.

Pursuant to the Local Rules of the United States District Court for the District of New Mexico,

Maaco may file a motion to tax costs within thirty (30) days of entry of judgment. D.N.M. LR-

Civ. 54.1.

D.     *Conclusion*

Maaco is entitled to an award of damages on the Franchise Agreements, the Sublease,

and the Guaranties in favor of Maaco.  Maaco is entitled to an award of reasonable attorneys'

fees, court costs, and expenses incurred in filing and pursuing this action against Defendants.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default and Summary Final

Judgment (Doc. 15) is GRANTED with respect to default judgment, and that Plaintiff Maaco

Franchisor SPV, LLC, whose address is 440 South Church Street, Suite 700, Charlotte, North

Carolina 28203, shall jointly and severally recover from Defendants, S&J Auto1 LLC whose

address is 6147 Zuni Road S.E., Albuquerque, New Mexico 87108 and Jeffrey Schultz and

Stephanie Schultz whose address is 1220 Cannonade Court, S.E., Albuquerque, New Mexico 87123, the sum of $285,923.53, plus pre-judgment interest totaling $4,794.14, and post-judgment interest at the rate of 8% thereafter, compounded annually, pursuant to N.C. Gen. Stat. § 24-1, until the entire amount is paid in full for which let execution issue forthwith, in accordance with the findings of recovery as follows:

    a.  Counts I, III, and VII – Breach of the M2598 Franchise Agreement and Personal Guaranty No. 2 against S&J Auto1 LLC, Jeffrey Schultz, and Stephanie Schultz, jointly and severally, in the amount of $57,410.13 in past due accounts receivable plus $4,794.14 in pre-judgment interest, and $228,513.40 in future lost royalties and advertising contributions.

IT IS FURTHER ORDERED that Plaintiff Maaco Franchisor SPV, LLC, whose address is 440 South Church Street, Suite 700, Charlotte, North Carolina 28203, shall jointly and severally recover from Defendants, S&J Auto2 LLC whose address is 2101 1st Street N.W., Albuquerque, New Mexico 87102and Jeffrey Schultz and Stephanie Schultz whose address is 1220 Cannonade Court, S.E., Albuquerque, New Mexico 87123, the sum of $210,072.93, plus pre-judgment interest totaling $4,453.41, and post-judgment interest at the rate of 8% thereafter, compounded annually, pursuant to N.C. Gen. Stat. § 24-1, until the entire amount is paid in full for which let execution issue forthwith, in accordance with the findings of recovery as follows:

    a.  Counts II, IV, and VII – Breach of the M2599 Franchise Agreement and Personal Guaranty No. 2 against S&J Auto2 LLC, Jeffrey Schultz, and Stephanie Schultz, jointly and severally, in the amount of $53,329.84 in past due accounts receivable plus $4,453.41 in pre-judgment interest, and $156,743.09 in future lost royalties and advertising contributions.

IT IS FURTHER ORDERED that Plaintiff Maaco Franchisor SPV, LLC, whose address is 440 South Church Street, Suite 700, Charlotte, North Carolina 28203, shall jointly and severally recover from Defendants, S&J Holdings Inc. whose address is 1220 Cannonade Court, S.E., Albuquerque, New Mexico 87123 and Jeffrey Schultz and Stephanie Schultz whose address is also 1220 Cannonade Court, S.E., Albuquerque, New Mexico 87123, the sum of $283,555.14 plus pre-judgment interest totaling $23,678.80, and post-judgment interest at the rate of 8% thereafter, compounded annually, pursuant to N.C. Gen. Stat. § 24-1, until the entire amount is paid in full for which let execution issue forthwith, in accordance with the findings of recovery as follows:

a. Counts V and VI – Breach of the Sublease and Personal Guaranty No. 1 against S&J Holdings Inc., Jeffrey Schultz, and Stephanie Schultz, jointly and severally, in the amount of $149,618.21 in past due rent for Center M2598, $133,936.93 in past due rent for Center M2599, and $23,678.80 in pre-judgment interest.

IT IS FURTHER ORDERED that Plaintiff is entitled to an award of reasonable attorneys' fees and court costs upon applicable motions.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE